STATE, EX REL. BASISTA, RELATOR, *v.* MELCHER, BUILDING COMMISSIONER, ET, RESPONDENT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26095.   Decided February 21, 1963.

*Mr. James C. Maher, Messrs. Burke, Haber & Berick*, for relator.

*Mr. Raymond D. Metzner* and *Mr. Aaron J. Ritzenberg*, for respondent.

SKEEL, P. J. This is an original action, filed in this court, wherein the relator seeks a writ of mandamus directed to respondent requiring him to issue a building permit upon an application filed therefor.

The respondent had refused to issue such permit. The respondent is the Building Commissioner of the City of University Heights.

The relator is the owner of two vacant lots situated on the southside of Cedar Road just west of the intersection of Fenwick and Cedar Roads in the City of University Heights. It is alleged in the relator's petition that said lots are in a U-2 (two-family) residence district under the provisions of the comprehensive zoning ordinance of the City. It is also alleged that the zoning ordinance provides that its provisions shall be administered by the Building Commissioner of the City and also provides for a Board of Zoning Appeals which is vested with power to decide questions involving the interpretation of any provision of the zoning ordinance, to approve applications for special permits, and to vary and adjust the strict application of the provisions of the zoning ordinance when its strict application would result in practical difficulty or unnecessary hardship such as would deprive an owner of the reasonable use of his land. The petition further alleges that the Board may permit "transitional uses" which create a "buffer zone" between districts, such power being limited to the approval of a "transitional use" in any district within 150 feet of the boundary line of a less restricted district which the Board deems to be a suitable "transitional use" between the more restricted and less restricted districts in question. The zoning ordinance also provides for an appeal to the Board of Zoning Appeals by any person aggrieved by a decision of the Building Commissioner pertaining to the regulations of the zoning ordinance.

In addition, it is alleged that on February 23, 1962, the relator tendered an application, together with the required fee, to the respondent requesting a permit to build a building identical to the existing building, on the lot immediately adjoining (to the east) the property described in the application (the "identical building" is at the southwest corner of Fenwick and Cedar, which property is owned by the relator). The ap-

plication and plans, filed with the application, are for a two-story building for use as a residence (two suites) on the second floor and a professional office on the first floor. Upon the refusal of the permit by the respondent, an appeal was taken to the Board of Zoning Appeals where, upon hearing, the Board overruled the decision of the Building Commissioner and ordered the permit to be issued.

The petition then alleges that notwithstanding the order of the Board of Zoning Appeals, the respondent has and still refuses to issue said permit, that such refusal constitutes conduct in contravention of the provisions of the zoning ordinance, and that it constitutes an invasion of relator's constitutional rights in the use of his property.

The answer of the respondent admits that he is the Building Commissioner of the City of University Heights and that he is charged with the duty of issuing building permits under the charter of the City and its applicable ordinances. The answer further denies that the Board of Zoning Appeals ordered the respondent to issue a building permit as applied for by the relator, but, in fact, ordered a "variance" under the provisions of the zoning ordinance but that said order was arbitrary and illegal and beyond the Board's authority and contrary to the express provisions of the zoning ordinance.

The answer also alleges that within the time allowed, the decision of the Board of Zoning Appeals was appealed to the City Council and that the relator appeared for the hearing on the appeal and that subsequent to such hearing, the City Council "granted the appeal" and denied relator's application by resolution passed by a vote of the Council. It is further alleged that the relator is bound by the decision of the City Council. The answer also denies that the relator has been deprived of his property without due process of law, but instead alleges that he may use said property for the construction of two-family houses, as provided by the zoning ordinance. The answer further alleges that the relator has an adequate remedy in the ordinary course of the law by appeal under the provisions of Chapter 2506, Revised Code, and that the act which the relator seeks to have performed is not an act which the law specifically enjoins as a duty of the respondent.

By reply, the new matter, adverse to relator's claims, set out in the answer, is denied.

The case was presented on stipulations of fact. The stipulations show that the relator is the owner of four lots situated on the southside of Cedar Road, beginning at the southwest corner of the intersection of Fenwick Road with Cedar Road and extending west in consecutive order for a distance of about two hundred two and one-half feet. These lots are known as Sublots 321, 322, 323 and 324 in the Rapid Transit Land Company's Subdivision No. 16. Sublot No. 321 is the lot located at the corner of the intersection of Cedar and Fenwick Roads. The relator has constructed a combination office and residence building on Sublot No. 321. The entire first floor, designed as an office, is the dental office of the relator. The second floor has two suites designed for residence purposes. Just how the relator was permitted to build a building partly devoted to offices on Sublot No. 321, which is now zoned for two-family residences, is not explained in the record. In fact, the record shows that a building permit was issued for the construction of a two-family house on this lot. The relator has also improved Sublot No. 324 at the extreme west of relator's property with a two-family house. It is now the purpose of the relator to improve the remaining lots (Sublots Nos. 322 and 323) with an identical building as the combination office and a two-family residence building now on Sublot No. 321 with certain parking facilities, as shown by a plat tendered in evidence. The objection to this evidence by the respondent is overruled and the exhibit received in evidence.

An application to build the above described building, accompanied with the proper fee and plans, was filed with the Building Department of the City and was dated February 23, 1962. The Building Commissioner of the City refused to issue a permit and within the time provided, an appeal was taken to the Board of Zoning Appeals. The Board, upon hearing, rendered the following decision:

"'* * * Motion by Abrams, seconded by Gravier granting variance in Zoning Code Ordinance No. 56-53 requirements to Dr. R. Edward Basista under Section 15-2 (C)-3, for development of Sublots Nos. 322 and 323 Cedar Road with build-

ing identical to existing building on Sublot No. 321 consisting of two residential suites upstairs and medical offices downstairs; including proper paving and draining of the parking area; suitable to screening; subject to the approval of traffic pattern by the Traffic Bureau; and subject to the conditions that plans for construction thereof meet with the approval of the Building Department.''

Article 7, Section 2 of the Charter of the City of University Heights creates a City Planning Commission. Its membership is composed of the Mayor, a member of the City Council, selected by the Council, and three electors of the City not holding other municipal office, appointed by the Mayor. (The term of office is six years.) Section 15 of the Zoning Code designates the Planning Commission as the Board of Zoning Appeals. The duties and powers of the Board of Zoning Appeals are spelled out in Section 15-2 of the zoning ordinance which provides, in part:

''The Board shall have the following powers and duties:

'' (a) * * * To decide any question involving the interpretation of any provision of this ordinance, on appeal from a decision of any administrative official, and further to decide matters left in this ordinance to the opinion of the Board, such as what is a suitable non conforming use to replace a legal non conforming use. (Section 14-1.)

'' (b) * * * to approve applications for special permits for any uses for which this ordinance requires such permits and their approval by the Board subject to the following requirements and other applicable provisions of this ordinance:

''1. The location, size, and character of the proposed use is such that, in general, it will be in harmony with the existing development of the district in which the site is situated and will not hinder or discourage the appropriate future development and use of land and buildings in the vicinity or impair their value, and will not conflict with the aims and goals of the general city plan.

''2. If the proposed site is in a residence district, the proposed use will not result in hazard to pedestrian traffic, especially to children. The height, bulk and location of buildings and the nature, height and location of walls and fences and

the extent and character of the landscaping are such that the development will be in harmony with residential community.

"3. * * * In acting on any application for a special permit the Board of Zoning Appeals may impose any conditions that it deems necessary to accomplish the reasonable application of the foregoing standards, and may deny such application, but only in accordance with those standards.

"* * *

"(c) On Uses Permitted Upon Special Permit:

"1. The Board of Zoning Appeals may permit any of the following uses in any district, subject to fulfillment of the requirements of paragraph (b) Section 15-2;

"* * *

"2. * * *

"3. Transitional uses. In any district within 150 feet of the boundary of a less restricted district, the Board may approve any use which the Board deems to be a suitable transitional use between the more restricted and the less restricted district in question, provided, however, that there is no existing occupancy between the site of the proposed use and the less restricted district boundary line which will be seriously injured by the proposed transitional use.

"* * *

"(d) On Variances from Ordinance Requirements:

"On appeal from a decision of the Building Commissioner to vary or adjust the strict application of the requirements of this ordinance in case of exceptionally irregular, narrow, shallow or steep lots or other exceptional physical conditions, when strict application would result in practical difficulty or hardship that would deprive the owner of the reasonable use of the land or building involved, *but in no other case.* In such instance, the Board shall designate such conditions in connection therewith as will, in its opinion, protect as far as reasonable the health, safety and values of adjoining and surrounding property and preserve the general purposes of the city plan." (Emphasis added.)

Section 15-3 of the Zoning Ordinance provides:

"(a) Application for Board Approval.

"* * *

"(2) Any person who deems his property to qualify for

approval of a special permit as provided in paragraph (b) of Section 15-2 may make application in writing for approval by the Board of his proposed use.

"(b) Appeal from Decision of Division of Building Engineering and Inspection.

"(1) Any person who deems his property to suffer such physical limitations * * * as to require an adjustment or variance of the regulations of this ordinance * * * may appeal in writing to the Board to approve such adjustment.

"(2) Any person aggrieved by any decision of the Building Commissioner * * * in any decision pertaining to the regulations of this ordinance may appeal in writing to the Board from such decision."

Section 15-4 of the Zoning Ordinance provides:

"Any such written application, as described in Section 12-3 (a) (Applications for a special permit) for approval by the Board shall be filed with the Division of Building Engineering and Inspection within ten days from the date of the application for the building permit or certificate of occupancy. Any such written appeal from the decision of the Building Commissioner * * * as described in Section 15-3 (b) shall be filed * * * (as is provided for appeals for special permits) within ten days * * * upon the appeal of the aggrieved person as the case may be."

A fee of $15.00 is to be paid in either case.

Section 15-7 of the Zoning Ordinance provides:

"Any person aggrieved by any final decision of the Board of Zoning Appeals may appeal such decision to the City Council within ten days of the published notice of the decision. * * * (a filing fee of $25.00 is provided for) * * * provided, however, that if a member of the City Council shall appeal on a matter of general public interest, no filing fee shall be required. * * *"

The claims presented by the relator to support his prayer for a writ of mandamus directing the Building Commissioner to issue a building permit to build a combination office and two-family dwelling on Sublot No. 323, which is to be identical to his building on Sublot No. 321, are:

(1) The appellant who appealed to Council had no standing to appeal and the ordinance purporting to grant the right of appeal (to the City Council) is unconstitutional, particularly as applied in this case.

(2) The Board granting the variance was proper.

(3) That as to relator's property, the ordinances involved are unconstitutional.

The facts, as stipulated, with regard to the property involved, its zoning classification for two-family residences, the present use of Sublots 321 and 324, and the combination office and residence building which relator proposes to build on Sublot No. 323, as set out in relator's petition, are not in dispute. It is also clear that an application to build such building was filed with the Building Department of the City and that the Building Commissioner, upon consideration thereof, refused such permit because the intended improvement would be a violation of the zoning provisions of the district where the lot was located. Upon appeal, the Board of Zoning Appeals purported to grant a "variance" which decision the councilmanic member of the Board attempted to appeal to the City Council. The notice of appeal read, in part:

"I do hereby appeal the decision of the Board of Zoning Appeals * * * granting a variance in zoning * * * for development of Sublots Nos. 322 and 323 Cedar Road which development would consist of two residential suites upstairs, medical offices downstairs, parking area, etc. This appeal is based on the following premises:

1. This variance was approved without full and complete plans of Dr. Basista and places no definite restrictions of the type of structure and use of land, parking facilities, screening and shrubbery, etc.

2. The Board of Zoning Appeals exceeded its authority in granting this variance.

(Signed)   Robert S. Sugarman,<br>
Councilmanic Member of the<br>
Board of Zoning Appeals.''

The appellant, who filed the notice of appeal, was the councilmanic member of the Board of Zoning Appeals and, in that capacity, heard the relator's appeal from the decision of the Building Commissioner who had refused the relator's application for a building permit. He, as the councilman member of the Board, voted in the negative on the resolution adopted by the Board of Zoning Appeals granting what it called a

"variance." The proceeding on appeal to the Council of the City of University Heights was objected to on the ground that, under the ordinances of the City and the law, a notice of appeal, signed and filed by a member of the Board of Zoning Appeals, which Board's decision the appellant seeks to review, is contrary to law and the applicable ordinances and, therefore, ineffective to confer jurisdiction on the City Council to hear the appeal. The relator entered his objection to the jurisdiction of the City Council to hear the appeal, which was overruled, whereupon he attended the hearing on appeal and presented his side of the case. The City Council, in passing on the Appeal, adopted the following resolution with regard to relator's application for a building permit:

"The Council finds that Sublots 322 and 323 on Cedar Road, belonging to the applicant, R. E. Basista are in a U-2, two-family residence district; that there is no hardship or problem under Section 15-2 (c) of the Zoning Code involved in the use of said lots by the owner for a two-family residence; that the said sublots are not so located as to come within the purview of Section 15-2 (c) 3 of the Zoning Code (transitional uses); and that the Board of Zoning Appeals exceeded its authority in granting a permit or variance."

The City Council thus reversed the order of the Board of Zoning Appeals and denied relator a permit to build a combination office and two-family residence building on sublot 323 admittedly located in a U-2 district.

It should be noted that there are two areas in which the Board of Zoning Appeals is vested with jurisdiction to grant relief where a proprietor of land claims that the regulations of the Zoning Ordinance applicable to his property create a hardship as to its use. The first is to grant what is called in the ordinance a "variance" (as the term is defined in the ordinance) upon an appeal from the adverse decision of the Building Commissioner of the proprietor's application seeking a building permit. The right to overrule the Building Commissioner's action in a particular case is based entirely on a hardship created by the physical situation of the lot involved. The power to grant a "variance" is limited to a situation where the lot is "exceptionally irregular, narrow, shallow or steep * * * or

other exceptional physical conditions." No such unusual circumstances is shown by the stipulations nor is such claim made in the petition that the designated physical limitations are applicable to the lots here involved. The stipulations contain photographs of the lots and the surrounding territory which clearly disclose that the lots are available for the uses for which they are zoned. They do not differ in any way from the lots relator has already improved. The objection to the consideration of these exhibits as evidence is overruled and such photographs are received as evidence.

Our conclusion must follow that the Board of Zoning Appeals was without jurisdiction to grant a "variance" which in truth would constitute an amendment to the use provisions of the ordinance as applicable to relator's property. The relator did not attempt to assert rights under Section 15-3 (b) (1) which provides the only authority for the Board to grant relief to applicants for a building permit as to property claimed to be suffering from such physical limitations as to require an "adjustment or variance."

There is no claim asserted for a right, as a matter of law, to the issuance of a "special permit." No such allegations are found in the pleadings. The property involved is more than one hundred fifty feet from the borderline of property in a lower zoning classification, and, therefore, the provisions of Section 15-2 (c) 3 of the Zoning Ordinance do not apply. Although this subject is argued in the briefs, we find the record gives no support whatever to a claim for a "special" permit.

While the rights of the relator are to be determined in this case on the record presented, the proceeding being in no sense an appeal from the findings of the Building Commissioner, the Board of Zoning Appeals, or the action of the City Council on a claimed appeal to that body, the parties have stressed the proceeding before these governmental agencies as the basis of their respective claims for and against the right of the relator, as a matter of law, to have issued to him a building permit to build a combination office and residence building on his property located in a territory zoned for two-family residences. Having already determined that the Board of Zoning Appeals, as shown by the undisputed facts in the record, was without jurisdiction

to grant a "variance" which, in legal effect, was an amendment to the zoning ordinance and a power which is exclusively within the jurisdiction of the legislative body of the City, we are constrained to deal briefly with the right of the councilmanic member of the Board of Zoning Appeals to appeal the decision of such Board (a decision in which he participated as a trier of the facts) to the City Council for review. The case law of Ohio is clearly against such right unless authority is provided therefor by ordinance or statutes. The right of a member of a board exercising quasi-judicial powers to appeal the decision of the Board rendered in the exercise of such power to the Court of Common Pleas is non existent. If a member of the Board attempts to exercise the right of appeal as an interested party or as a person aggrieved, then he should not be a trier of the facts in a case in which he is interested. One who has an interest in the outcome of litigation has no right to act as the trier of the facts in such litigation presented in a judicial or quasi-judicial proceeding.

The only ordinance called to our attention as dealing with the question is Section 15-7 of the Zoning Ordinance which provides that "Any person aggrieved by any final decision of the Board of Zoning Appeals may appeal such decision to the City Council * * *." After setting forth the procedure and requiring a deposit of twenty-five dollars to be paid on the filing of such appeal, this Section states:

"* * * provided, however, that if a member of the City Council shall appeal on a matter of general public interest, no filing fee shall be required."

Even assuming that this provision is constitutional, which is in serious doubt, it certainly could not be cited as authorizing the councilmanic member of the Board of Zoning Appeals, without the slightest showing that he is a person aggrieved by a decision in which he acted as a member of the trial tribunal, to become the appellant in a proceeding to appeal such decision to the Council of the City of University Heights of which he is also a member. The notice of appeal, as quoted above, conferred no jurisdiction on the City Council to hear said appeal. Its decision was without legal effect.

The minutes of the Board of Zoning Appeals' meeting, held

March 12, 1962, express in a very clear way the difficulties confronting the relator in this case. The paragraph of the minutes referred to reads as follows:

"The Board concurred that Dr. Basista's present building was beautifully maintained and a credit to the community and they have been in sympathy with his request to develop his adjoining lots with identical buildings and use but there was no way, under our present code, of granting such permission without rezoning which would result in spot zoning, unless his request could be considered a transitional use in which case they were in favor of granting same."

A careful examination of the record presented fails to establish the relator's clear legal right to a permit to build a combination office and residence building on Sublot 323 which is zoned for two-family use. The writ prayed for is, therefore, denied.

KOVACHY and SILBERT, JJ., concur.